IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARDO ANGEL NAVARRETTE,<br><br>  Plaintiff,<br><br>  v.<br><br>UNITED STATES OF AMERICA,<br><br>  Defendant.<br>_____/ | No. C 04-00760 JSW<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Now before the Court is the motion by defendant United States of America ("Defendant") for summary judgment against plaintiff Richardo Angel Navarrette ("Plaintiff"). After careful consideration of the parties' papers, the relevant legal authority, and having had the benefit of oral argument, for the reasons set forth herein the Court GRANTS Defendant's motion for summary judgment.

**FACTUAL BACKGROUND**

Plaintiff was injured when he was camping at the Liberty Glen Campground at Lake Sonoma. Liberty Glen Campground is owned and operated by the Army Corps of Engineers. (Declaration of Perry Crowley ("Crowley Decl."), ¶ 2.) The Army Corps designed the campsite along the top of a hill to take advantage of the surrounding views. (*Id*.)

Plaintiff and his friends were camping at site C-88 on the campground. (Declaration of Barbara Bosman-Moss ("Bozman-Moss Decl."), Ex. B (Declaration of Sol De Otono Navarrette), ¶¶ 4,6.) Site C-88, which is no longer in use, was located on the southern edge of the campground next to a steep grassy slope which faces to the south and a creek gorge which is

to the southwest.  (Bozman-Moss Decl., Ex. I (Deposition of John Thomas Hutlzman, Re.D) at 47:20-24, Ex. J (Trip Report), Ex. K (Deposition of Perry Richard Crowley) at 68:23-69:1.)

At night, Plaintiff for a walk along a path near the campsite which led directly to a rocky cliff.  Plaintiff fell off the cliff approximately thirty feet down onto jagged rocks and severely injured his head.  As a result of this incident, Plaintiff now suffers from a life-long brain injury.  (Bozman-Moss Decl., Ex. F (Kaslar Depo. 36:20-37:4), Ex. N (Mueller Report), and Ex. O (Ruff Report).)

Plaintiff contends that the government was negligent in designing the campground, more specifically campsite C-88, in failing to properly inspect for hazards at the campsite, and in failing to warn or erect signs and/or barriers to protect the public from the rocky cliff.  (Opp. Br. at 1.)

Pursuant to 16 U.S.C. § 460d, the Army Corps of Engineers is "authorized to construct, maintain, and operate public park and recreational facilities at water resource development projects."  Federal regulations further provide that the Army Corps of Engineers shall "manage the natural, cultural and developed resources of each project in the public interest, providing the public with safe and healthful recreational opportunities while protecting and enhancing these resources."  36 C.F.R. § 327.1.  The Army Corps of Engineer Policies and Procedures regarding Recreation Operations and Maintenance requires the Corps of Engineers to provide "quality outdoor recreation experiences" and to weigh "sound environmental stewardship" against "long-term public access to, and use of the [Corps's] natural resources."  (Crowley Decl., Ex. B at 2-1, 2-2.)  The Corps of Engineers' Engineering and Design Standards for Recreational Facilities and Customer Services, Engineering Manual 1110-1-400, further directs employees to follow guiding principles in designing recreation areas and facilities, which include "[c]onsidering functional use, creative design, environmental harmony, and economy of construction," "[m]aintaining health, safety, security, and comfort of the customers," "[c]reating user friendly areas and facilities," and "[p]rotecting resources from physical and aesthetic degradation."  (Crowley Decl., Ex. C at 1-3, 1-4.)

With respect to placing fences, the Corps of Engineers' Engineering and Design Standards for Recreational Facilities and Customer Services provide that employees should exercise "care in determining the type of location of fencing," and weigh the need for the fence against the need to preserve a natural landscape. (Crowley Decl., Ex. C at 2-17 ("Fencing should generally only be constructed for access control, traffic control, screening, and safety purposes. Care must be exercised in determining the type and location of fencing. Where fencing is necessary it should be of the minimum height and design possible to be unobtrusive and still accomplish the required function.").) With respect to signs, the design standards provide that the number of signs should be kept to a minimum and that signs should only be provided where needed to regulate traffic, warn of hazardous conditions, establish restrictions and provide information. (Crowley Decl., Ex. C at 2-17.)[1]

---

[1] Plaintiff cites to an outdated Engineering Manual 1110-1-400, dated July 31, 1987. (Bozman-Moss Decl., Ex. Q). Chapter 2 of the manual cited to by Plaintiff provides:

    2-1. <u>General</u>. The health, safety, and security of the general public at recreational areas must be designed to fit into facilities from the beginning of the planning stage and continued throughout the design, construction, and operation stage. . . .

    2-2. <u>Protection and Control</u>. Access to recreation areas should be controlled with natural barriers such as beams, ditches, gates, barricades, and/or fencing. This protects the natural resources and the general public by keeping them within designated areas and away from potentially hazardous conditions. . . .

. . .

    2-4. <u>Fencing</u>. ....Fencing may also be required to protect the public from hazardous conditions such as steep bluffs . . . and to provide security for sensitive areas . . . .

. . .

    2-7. <u>Signs</u>. Signs shall be provided only where needed to regulate traffic, warn of hazardous conditions, establish restrictions (and restricted areas), and to provide information. . . .

Additionally, Chapter 7 provides:

    7-2. <u>Camping Areas</u>.
        a. General. ....The design of facilities should provide for public use while protecting the resources. A range of design criteria is established to provide flexible standards for the designer to adjust to existing conditions, resources, and where appropriate, local sponsor's standards. . . .

. . .

        c. Facilities.

. . .

            (3) Fence or Railing. Provide fence or railing as required for safety along steep banks and to deter access along restricted use zones.

(Bozman-Moss Decl., Ex. Q.)

The Lake Sonoma and Warm Springs Dam Park Safety Plan provides a checklist intended "only as a guide in the accomplishment of responsibilities." (Bozman-Moss Decl., Ex. P at 1.) The checklist states that in access area grounds "dangerous terrain conditions, such as drop-offs, etc. will be properly marked or fenced." (*Id*., Ex. P at 12.)

**ANALYSIS**

**A.      Legal Standard.**

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party meets this initial burden, the non-moving party must go beyond the pleadings and by its own evidence "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)) (stating that it is not a district court's task to "scour the record in search of a genuine issue of triable fact"). If the non-moving party fails to make this showing, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

**B.      Defendant's Motion for Summary Judgment**.

Defendant moves for summary judgment based on the discretionary function exception to the Federal Tort Claims Act, 28 U.S.C. § 1346(b) ("FTCA"). According to Defendant, the discretionary function exception applies and thus deprives the Court of jurisdiction to hear this case.

The FTCA waives governmental immunity from suits for negligence. 28 U.S.C. § 1346(b); *see also Chaffin v. United States*, 176 U.S. 1208, 1211 (9th Cir. 1999). However, the FTCA does not waive immunity when the government is performing a "discretionary function." *Miller v. United States*, 163 F.3d 591, 593 (9th Cir. 1998). The discretionary function immunizes the government from claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the party of a federal agency or an employee of the government whether or not the discretion involved be abused." 28 U.S.C. § 2680(a); *see also Miller*, 163 F.3d at 593. Courts use the following two-part test to determine if the discretionary function exception applies: (1) the act must be discretionary in nature, and (2) the discretion must involve the type of judgment that the exception is designed to shield. *Miller*, 163 F.3d at 593. The government bears the burden of demonstrating the discretionary function exception applies. *Id*. at 594. If the discretionary function exception applies, governmental decisions are immune from liability, even if such decisions were negligently made. *Chaffin v. United States*, 176 F.3d 1208, 1211 (9th Cir. 1999).

**1.    Act Was Discretionary in Nature**

Under the first part of the discretionary function test, the decision or act in question must be discretionary, and thus, involve some element of choice. *Miller*, 163 F.3d at 593 (citing *Berkowitz v. United States*, 486 U.S. 531, 536 (1988)). If a "federal statute, regulation, or policy specifically prescribes a course of conduct for an employee to follow," the decision or act is not discretionary. *Berkowitz*, 486 U.S. at 536. Simply put, "[w]ithout choice, there can be no discretion." *Miller*, 163 F.3d at 594.

Plaintiff argues that the government action was mandated in specific documents, and thus, was not discretionary. (Opp. Br. at 7-8.) Plaintiff concedes that the Army Corps of Engineers has discretion in selecting sites and in designing their campgrounds. (*Id*. at 8.) Nevertheless, Plaintiff contends that the Army Corps of Engineers ignored the dictates of its own Engineering Manual and the Safety Plan. According to Plaintiff, the government was required to consider potentially hazardous conditions, such as steep slopes and that it did not

have discretion to ignore their own design standards in placing a campsite so close to a cliff. (*Id*. at 9.)

A safety standard operates to remove discretion under the first prong of the discretionary function test only when such standard "is embodied in a *specific* and *mandatory* regulation or statute which creates clear duties incumbent upon the governmental actors." *Kennewick Irrigation Dist. v. United States*, 880 F.2d 1018, 1026 (9th Cir. 1989) (emphasis in original). General duties to promote safety are insufficient to erase any discretion. *Id*.; *see also Blackburn v. United States*, 100 F.3d 1426, 1433 (9th Cir. 1996) (holding that guidelines and regulations only set out general goals and policies regarding identifying and warning of hazards and thus necessarily involved discretion in determining the precise manner in which to meet such goals and policies).

Here, the guidelines and principles set forth in the Engineering Manual are not specific or mandatory enough to erase any discretion. The manual provides that care should be "exercised in determining the time and location of fencing," and that where fencing is necessary, "it should be of minimum height and design possible." (Crowley Decl., Ex. C at 2-17.)  In terms of signs, the manual directs that signs should be keep to a minimum and provided only where needed. (*Id*.)  Implicit in the manual is that the Army Corps of Engineers must first make a determination that fencing or signs are necessary. The Safety Plan does not provide any directives that are any more mandatory or specific. Rather, it explicitly provides that the points listed in the plan are intended "only as a guide in the accomplishment of responsibilities." (Bozman-Moss Decl., Ex. P at 1.)  Therefore, neither the Engineering Manual nor the Safety Plan provide *specific* and *mandatory* standards which remove any discretion. Accordingly, the first prong of the test is satisfied.

**2.     Act Involved the Kind of Discretion Intended to Be Covered**.

Because discretion is involved, the Court must address the second prong of the test and determine if the discretion involves the type of judgment that the discretionary function exception is designed to shield. *See Berkowitz*, 486 U.S. at 536; *Miller*, 163 F.3d at 593. The exception protects government actions and decisions that are based on "social, economic, and

6

1  political policy." *Berkowitz*, 486 U.S. at 536. "The decision need not be *actually* grounded in
2  policy considerations, but must be, by its nature, *susceptible* to a policy analysis." *Miller*, 163
3  F.3d at 593 (citing *United States v. Gaubert*, 499 U.S. 315, 325 (1991) (emphasis added)).

4  The Ninth Circuit has applied the discretionary function exception to similar cases, in
5  which the decision whether or not to warn against dangers in recreational areas implicated
6  competing interests and policies. For example, in *Reed v. United States Department of the
7  Interior*, 231 F.3d 501, 504-05 (9th Cir. 2000), the plaintiff argued that the Bureau of Land
8  Management ("BLM")'s alleged failure to warn of the hazard of camping in an area subject to
9  restricted night-time vehicular travel and that BLM's approval of a site plan that failed to
10 segregate cars from tents were not protected by the discretionary function exception. The
11 government's land use plan in effect at that time required the BLM to provide "as many
12 recreational opportunities as possible ... without undue environmental degradation." *Id*. at 505.
13 The court disagreed with the plaintiff and held that the discretionary function exception applied
14 because BLM's actions involved discretion in balancing "competing public policy concerns,
15 including concerns about public access, safety, resource allocation, and the environment." *Id*.

16 Similarly, in *Valdez v. United States*, 56 F.3d 1177, 1180 (9th Cir. 1995), the failure to
17 warn of danger posed by a waterfall near a park was protected by the exception. Although there
18 were guidelines requiring the National Park Service ("NPS") to warn the public of special
19 hazards through educational materials, the court noted that the NPS could not apprise the public
20 of every potential danger posed by every feature of the park. Thus, the court concluded that
21 judgment was required to determine which hazards required an explicit warning. *Id*. The
22 exception applied because the decision regarding if and how to warn against particular dangers
23 in the park "clearly implicate[d] a choice between the competing policy considerations of
24 maximizing access to and preservation of natural resources versus the need to minimize
25 potential safety hazards." *Id.*

26 In *Childers v. United States*, 40 F.3d 973, 976 (9th Cir. 1994), the parents of a child who
27 died from an accident on a trail in a national park could not recover for their loss. A statute
28 required the NPS to balance the preservation of national parks with public access, and thus, the

7

NPS had to "exercise judgment and choice about what sorts of facilities and safety features, if any, to provide." *Id*. at 974. Other procedures and programs required the NPS to weigh public access against visitor safety. *Id*. The court held that the decision to leave a trail open but not maintain it or post any warnings fell within the discretionary function exception because such decision "inherently require[d] a balancing of public policy objectives, such as resource allocation, visitor safety and visitor access." *Id*. at 974-75.

Citing *Summers v. United States*, 905 F.2d 1212, (9th Cir. 1990), Plaintiff argues the discretionary function exception does not apply because the government failed to follow the Lake Sonoma Safety Plan and failed to implement public safety measures. In *Summers*, the court found the exception did not apply to the failure to post a sign warning of the risks of stepping on hot coals. *Id*. at 1215-16; *see also Whisnant v. United States*, 400 F.3d 1177, 1181 (9th Cir. 2005) (holding that "matters of scientific and professional judgment – particularly judgments concerning safety – are rarely considered to be susceptible to social, economic, or political policy"). However, as noted by Ninth Circuit in *Childers*, the discretionary function exception did not apply in *Summers*, because there, the failure to post a warning sign did not reflect any policy considerations, but rather "was merely a departure from safety regulations." *Childers*, 40 F.3d at 975; *see also Noel v. United States*, 893 F. Supp. 1410, 1420 (N.D. Cal. 1995) (holding that the exception did not apply to decision motivated *solely* by safety considerations and did not involve any balancing of social, economic or political considerations).

Thus, the key to the determination of whether Defendant's design of the campsite, including the lack of any signs or barriers between the campsite and the cliff, was merely a departure from safety guidelines and considerations, or whether the design decisions implicated competing policy concerns. Here, the both federal regulations and the policies and procedures created by the Army Corps of Engineers direct Corps employees to balance competing policies in designing parks and campgrounds. Safety is only one of the policies employees are directed to consider. *See* 36 C.F.R. § 327.1 (directing the Corps of Engineers to "manage the natural, cultural and developed resources of each project in the public interest, providing the public with

8

safe and healthful recreational opportunities while protecting and enhancing these resources"); *see also* Corps of Engineer's Policies and Procedures regarding Recreation Operations and Maintenance, attached as Ex. B to Crowley Decl. (requiring the Corps of Engineers to provide "quality outdoor recreation experiences" and to weigh "sound environmental stewardship" against "long-term public access to, and use of the [Corps's] natural resources."); Corps of Engineers' Engineering and Design Standards for Recreational Facilities and Customer Services, Engineering Manual 1110-1-400, attached as Ex. C to Crowley Decl.)  Accordingly, the Court concludes that the decisions involved in designing the Liberty Glen Campground, including the decisions regarding what, if any, safety precautions should be provided, involved the type of judgment that the discretionary function exception is designed to shield.

Plaintiff also attempts to distinguish the decision regarding the location of the campsite from the decision regarding what safety measures to include, labeling the former as design activity and the later as mere implementation.  The Ninth Circuit distinguishes between design and implementation.  While "the design of a course of action is shielded by the discretionary function exception, ... the implementation of that course of action is not." *Whisnant*, 400 F.3d at 1182 (citation omitted).  In *Whisnant*, the exception did not apply where the government had designed safety inspection procedures and simply failed to follow them.  *Id*. at 1183.  In *ARA Leisure v. United States*, 831 F.3d 193, 195 (9th Cir. 1987), the court held that designing a road without guardrails was a choice grounded in policy, but the failure to maintain the road according to the original design involved "safety considerations under an established policy rather than the balancing of competing public policy considerations."

Plaintiff concedes that the choice to create a campground at Lake Sonoma and the decision of where to locate the campsites on the terrain were policy decisions.  Plaintiff further concedes that the decision to "put campsite C-88 at the edge of the hill to take advantage of the view" was a policy decision, but argues that "the decision to place and grade the campsite within 30 feet of the edge of a dangerous cliff that was not observable from anywhere within the campsite, without the protection of any beams, ditches, gates, barricades, and/or fencing barriers" was not.  (Opp. Br. at 10-11.)  Plaintiff argues that the failure to identify and address

9

the dangerous drop-off located near the campsite was a failure in implementation of the campsite design and attempts to characterize the government's conduct as a "breach in judgment concerning safety." However, Plaintiff's argument assumes that the "design" of the campsite is limited to determining its location, and that the decisions regarding if and what safety protections should be at the campsite were not part of the design. Plaintiff has no support for making such a distinction. In fact, the authority cited by Plaintiff demonstrates otherwise. *See Whisnant*, 400 F.3d at 1181 (holding that designing a road without guardrails was a choice grounded in policy); *ARA Leisure*, 831 F.3d at 195 (choice of how to design a road in the national park included decision of whether to use guardrails, and thus was covered by the discretionary function exception).

Finally, Plaintiff argues the exception cannot be applied unless there is actual evidence that discretion was involved in the decision making process. However, in *Childers*, the court made clear that the determination of whether the exception applies "does not depend ... on whether the federal officials actually took public policy considerations into account. All that is required is that the applicable statute or regulation gave the government agent discretion to take policy goals into account." *Childers*, 40 F.3d at 974 n.1 (citing *United States v. Gaubert*, 499 U.S. 315, 324-25 (1991)). Here, both the regulations and the agency's own policies and procedures give the Army Corps of Engineers employees discretion to balance competition policy considerations in designing campsites. Accordingly, the discretionary function exception applies and deprives the Court of jurisdiction to adjudicate this matter.[2]

---

[2] Before the hearing on this motion, Plaintiff provided additional authority, none of which provide any basis to alter this Court's conclusion that the discretionary function exception applies. Because the Court concludes that the discretionary function applies and deprives the Court of jurisdiction, the Court need not address Defendant's alternative arguments raised in its motion.

10

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendant's motion for summary judgment.

**IT IS SO ORDERED.**

Dated: August 8, 2005

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE